UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERMA LANDA, | ) 1:05cv0676 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## BACKGROUND

Plaintiff Erma Landa ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application for supplemental security income on February 6, 2003, alleging disability due to osteoporosis and arthritis. AR 100-104, 119-128. Plaintiff indicated

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On May 24, 2006, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

that these impairments began bothering her on February 1, 2002, but that she has never been employed. AR 120. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 74-77, 80-83, 84. On October 6, 2004, ALJ Stanley Hogg held a hearing. AR 273-299. On December 17, 2004, ALJ Hogg found that Plaintiff was not disabled. AR 12-21. On April 9, 2005, the Appeals Council denied Plaintiff's request for review. AR 5-7.

Hearing Testimony

ALJ Hogg held a hearing in Bakersfield, California, on October 6, 2004. Plaintiff appeared with her attorney, Geoffrey Hayden. AR 273.

Plaintiff testified that she was 36 years old and completed the eighth grade. She can read at the second-grade level. AR 296. She does not have a car and cannot drive. She has never worked. AR 277.

Plaintiff testified that she could not work because she could not read and write and therefore couldn't fill out an application. AR 278. When asked what her physical problems were, she indicated that she has osteoporosis in her feet. She thought she could walk for half a block before needing to stop. She could lift and carry less than 10 pounds without pain. She could sit for about 30 minutes before needing to stand, and could stand for about 15 minutes before needing to sit. She explained that she has to sit with her foot elevated after 30 minutes. AR 292. She can bend at the waist, but cannot kneel, stoop or squat to the ground. AR 278. She takes numerous medications, but they don't cause any side effects. AR 283-285.

Plaintiff explained that her feet hurt all the time, and that she has trouble putting on her shoes and walking. AR 286. She also has problems with migraine headaches. She estimated her pain to be an 8 out of 10, even with medication. AR 286-287. If she doesn't take her medicine, her pain is a 9-10. AR 291. She uses a brace on her left leg, and elevates the leg when she sleeps. AR 287.

During a typical day, she gets up and gets her kids, ages 9 and 11, ready for school, straightens up the kitchen a little, and watches television. AR 288, 292. She cleans up the kitchen and makes dinner, is able to grocery shop but has some trouble being on her feet. AR

288. She washes dishes, does some laundry, and makes the beds. AR 293. Plaintiff testified that the medication she takes for depression does not help, and that consequently, she is always upset and does not like to be around people. The medication she takes to help her sleep does not help, and she only gets about three hours of sleep a night. AR 290.

Medical Record

Dr. Fox examined Plaintiff's left heel and foot on October 1, 2002. The examination revealed a normal left heel and foot. AR 181.

Plaintiff went to the emergency room on October 8, 2002, complaining of bilateral heel pain for the past two months. AR 185. She was instructed to continue her medications, take hot foot baths, and follow up with her primary care physician. AR 186, 191.

An MRI of Plaintiff's left ankle on October 30, 2002, revealed a benign appearing lesion in the medial distal tibial cortex and a small amount of fluid within the tibiotalar and subtalar joints. The MRI was otherwise negative. AR 180.

On November 15, 2002, Plaintiff underwent a bone scan of her feet. The test revealed reactive/degenerative uptake in the bilateral ankles, small bones of feet and first metatarsophalangeal joints. There was no evidence of fracture or dislocation. AR 179. A December 2002 scan showed similar results. AR 174.

In January through April 2003, Plaintiff continued to complain of foot pain. AR 203-206. She was diagnosed with arthritis in both feet, diabetes, depression, GERD (Gastroesophageal Reflux Disease) and insomnia, and was prescribed multiple medications.

Plaintiff saw Sarupiner Bhangoo, M.D., on May 31, 2003, for a limited consultive back examination. AR 208. She complained of chronic back pain for the past 10-15 years, pain in both feet due to osteoporosis, and diabetes. Plaintiff indicated that she could perform all activities of daily living, including taking care of her two young children and her disabled husband. She does all of the cooking, cleaning and vacuuming. She was taking 14 medications. On examination, Plaintiff walked normally and was in no distress. She had no localized tenderness in her spine, range of motion in the spine was normal, and straight leg raising was within normal limits. Her knee and ankle reflexes were 4/4 bilaterally. Examination of her feet

1   revealed no limitation, no localized tenderness, no swelling, and no fracture.  Dr. Bhangoo

2   diagnosed chronic back pain and bilateral foot pain due to osteoporosis.  A review of her medical

3   records did not support any major problems with her feet.  He opined that Plaintiff should be able

4   to stand and/or walk for eight hours during an eight hour workday and sit for eight hours.  She

5   could occasionally lift 25 pounds and frequently lift 10 pounds.  She did not have any postural or

6   manipulative limitations and did not need an assistive device.  AR 208-210.

7           In June 2003, Plaintiff began complaining of back pain.  AR 270.

8           On June 18, 2003, a physician completed a Physical Capacities form for the Department

9   of California Social Services.  The physician opined that Plaintiff could stand and/or walk for 2-4

10  hours in an eight hour day, for 2-4 hours total, and sit for 2-4 hours in an eight hour day, for 2-4

11  hours total.  She could occasionally lift 10-15 pounds.  She could occasionally climb and

12  balance, but could never stoop, kneel, crawl, crouch or reach below her knees or above her

13  shoulders.  AR 254-255.

14          On August 23, 2003, Plaintiff saw Ina Shalts, M.D., for a comprehensive psychiatric

15  evaluation.  Her chief complaints were osteoporosis, diabetes, depression, and her inability to

16  read and write.  Plaintiff reported a history of drug use and alcoholism.  Her oldest daughter

17  passed away in April 2003.  She has 8 living children, but the six oldest children were taken from

18  her because of her neglect and verbal abuse.  She reported that she visits members of her family

19  and does some cleaning and laundry.  Her family helps her with household chores and someone

20  goes with her to the grocery store.  Plaintiff indicated that she likes to walk, read and listen to

21  music, and that she rarely watches television.  AR 226-227.

22          On mental status examination, her mood was depressed and she cried throughout the

23  interview.  She had some problems with concentration/calculations and Dr. Shalts noted her

24  history of a learning disability.  He diagnosed major depressive disorder, recurrent, severe

25  without psychiatric features, dysthymia, polysubstance abuse, in remission for four years, and

26  history of a learning disability, rule out borderline intellectual functioning.  Dr. Shalts believed

27  that Plaintiff needed psychological testing to evaluate her intellectual function.  Her prognosis

28  was fair, but Dr. Shalts believed she could improve with treatment.  He opined that Plaintiff

4

would have difficulty with social functioning and concentration, persistence and pace. She could understand and carry out simple instructions, but would have difficulty responding to coworkers, supervisors and the public. She could have difficulty responding to usual work situations and dealing with change to a routine work setting. AR 225-228.

In October 2003, State Agency psychiatrist Luyen Luu. M.D., completed a Psychiatric Review Technique form. She opined that Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining concentration, persistence and pace. She had moderate difficulties in maintaining social functioning. AR 235-248. In a Mental Residual Functional Capacity Assessment, Dr. Luu opined that Plaintiff was moderately limited in her ability to understand and carry out detailed instructions. She had no further limitations. Dr. Luu opined that Plaintiff could understand, remember and carry out simple instructions, perform activities with directions without additional support, and maintain attention in two-hour increments. Plaintiff could maintain socially appropriate behavior, accept instructions and respond appropriately to criticism from supervisors, and interact appropriately with the general public. Plaintiff could appropriately respond to changes in the work setting. AR 249-251.

Plaintiff returned to the doctor in September 2004, complaining that her medications for depression and sleep were not working. AR 256.

A September 2004, x-ray of her feet showed calcaneal spurs bilaterally, but was otherwise unremarkable. AR 257.

ALJ's Findings

The ALJ first explained that Plaintiff filed a prior application for SSI benefits, which was denied by the ALJ in March 1998. This created a presumption of continuing non-disability, but Plaintiff was able to meet her burden of proving changed circumstances by alleging a new impairment (arthritis). AR 15.

The ALJ found that Plaintiff had the severe impairments of arthritis, diabetes and depression. AR 20. He determined that Plaintiff retained the residual functional capacity ("RFC") to perform the basic mental demands of competitive, renumerative work on a sustained basis. AR 20. Plaintiff was limited to unskilled work that does not require frequent contact and

interaction with coworkers, supervisors or the public. Plaintiff could stand and walk for two hours and sit for six hours in an eight hour day. These restrictions would permit Plaintiff to perform a full range of unskilled, sedentary work. AR 20. The ALJ further found that Plaintiff's allegations of pain and limitation were not totally credible. AR 17-18. The ALJ applied Rule 201.24 of the Medical-Vocational Guidelines ("Grids") and determined that Plaintiff was not disabled. AR 20-21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (arthritis, diabetes and depression) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 20-21.

Plaintiff argues that the ALJ improperly applied the Grids at step five and should have requested the testimony of a Vocational Expert ("VE").

## DISCUSSION

Plaintiff contends that the ALJ improperly applied the Grids, and should have consulted a VE because of Plaintiff's non-exertional limitations caused by her depression. In other words, Plaintiff argues that because the ALJ found her depression to be a severe impairment at step one, she suffered from significant non-exertional limitations not contemplated by the Grids.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional

---

[3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1  limitations "significantly limit the range of work" he can perform, mechanical application of the
2  grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs
3  existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of*
4  *Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether
5  a non-exertional limitation significantly limits the range of work the claimant is able to perform
6  is left to the ALJ. *Id.*
7       In reviewing Plaintiff's claim, the ALJ determined that her depression was a severe
8  impairment. AR 16. This determination, however, was made at step two of the sequential
9  evaluation analysis. Plaintiff is attempting to turn a step two finding into a result at step five, but
10 while the steps are certainly interrelated, they each have independent factors and require separate
11 analysis. AR 16. Specifically, the determination as to whether an impairment is severe is
12 different than the determination of whether a severe impairment significantly limits the range of
13 work available so that VE testimony is required at step five.
14      At step three, the ALJ analyzed whether any of Plaintiff's impairments, including her
15 depression, were presumptively disabling. In making this determination, the ALJ had to decide
16 whether Plaintiff's impairments met or equaled the impairments in the Listing of Impairments in
17 Appendix 1, Subpart P, Regulations No. 4. As to her depression, the ALJ evaluated the required
18 elements set forth in 20 C.F.R. § 416.920a. AR 19. The ALJ found that Plaintiff's activities of
19 daily living were only mildly limited. AR 19. Citing Dr. Shalts' findings, the ALJ found that
20 Plaintiff had moderate difficulties in maintaining social functioning and moderate difficulties in
21 maintaining concentration, persistence and pace. AR 19. There was no evidence of episodes of
22 deterioration in a work-like setting, nor was there any evidence of a chronic organic mental
23 disorder. AR 19. Based on this analysis, the ALJ determined that Plaintiff's depression was not
24 severe enough to be presumptively disabling. AR 16.
25      At step five, the ALJ analyzed whether Plaintiff could perform other jobs existing in the
26 national economy. Although Plaintiff cites the evidence that the ALJ analyzed at step three in
27 support of her argument that the ALJ should have consulted a VE, the analysis at step five is
28 different than that at step three. As explained above, the ALJ did not need to consult a VE unless

Plaintiff's depression "significantly limit[ed] the range of work" she could perform, and this determination is left to the ALJ. *Id.*

Here, the ALJ found that Plaintiff's depression, although a severe limitation, did not result in more than mild or moderate restrictions. AR 19. Plaintiff had only mild restrictions in activities of daily living. AR 19. Although the ALJ found moderate restrictions in maintaining social functioning, he explained that although a restriction in this area would preclude frequent contact or interaction with co-workers, supervisors or the public, the limitation did not significantly affect the work available to Plaintiff. AR 19. Similarly, although Plaintiff had a moderate restriction in maintaining concentration, persistence and pace, the ALJ explained that the medical record suggests that her ability to perform unskilled work is intact, especially given her ability to care for her family and her independence in activities of daily living. AR 19.

The ALJ therefore determined that Plaintiff's nonexertional limitation did not significantly erode the scope of work available to Plaintiff at the sedentary level of exertion. AR 19-20. This determination was within the ALJ's discretion. *Id*.

Plaintiff also faults the ALJ for citing SSR 85-15. Plaintiff correctly states that SSR 85-15 applies to "persons who have *only* nonexertional limitation(s) of function or environmental restriction(s)." *See Sandgathe v. Chater*, 108 F.3d 978, 981 (9th Cir. 1997); *Roberts v. Shalala,* 66 F.3d 179, 183 (9th Cir. 1995). Here, the ALJ found that Plaintiff had both exertional and nonexertional impairments. However, as explained above, the ALJ determined that Plaintiff's nonexertional limitation to unskilled work that did not require frequent contact and interaction with co-workers, supervisors and the public did not significantly erode the occupational base, making any citation to SSR 85-15 harmless. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

1  Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in
2  favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff,
3  Erma Landa.
4
5       IT IS SO ORDERED.
6       **Dated:   August 9, 2006**              **/s/ Dennis L. Beck**
   3b142a                                UNITED STATES MAGISTRATE JUDGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28